BETTY DONNELL v. SIMON REESE AND G. W. KATZUNG.

No. 230.

1. CASE-MADE—*statement in, that it contains all the evidence is
part of.*  Where a statement is signed by counsel for plaintiff in
error to the effect that the case-made contains the evidence
offered and given upon the trial of the action, and such state-
ment immediately follows and is on the same page with the jour-
nal entry of the judgment, and precedes the judge's certificate to
the case-made, *held*, that such statement is a part of the case-
made as certified by the trial judge.

2. ESTOPPEL—*to establish, by silence, it is necessary that party
be misled.*  Where the answers of the defendants attempted to set
up an estoppel by silence on the part of the plaintiff at the time
a levy was made by the sheriff upon property alleged in the peti-
tion to have belonged to her and not to the execution debtor, such
answers should have alleged that the officer was misled by such
silence.

3. —— *evidence does not tend to prove.*  Evidence that the
plaintiff stated to the officer that part of the property which was
immediately thereafter levied on was already sold, did not tend to
prove the averments of the answers as to the alleged estoppel.

4. —— *silence by the owner of property when levy is made
does not constitute.*  Silence on the part of the owner of property

seized under execution as the property of another, such owner being present when the levy is made, does not estop the owner to recover for the wrongful seizure and sale. *Schilling v. Black*, 49 Kan. 552.

Error from Bourbon District Court. Hon. W. C. Perry, Judge *pro tem*. Opinion filed December 22, 1897. *Reversed*.

This action was commenced on September 24, 1891, by plaintiff in error against Simon Reese, as Sheriff of Bourbon County, Kansas, and G. W. Katzung, one of the sureties on said Sheriff's official bond, to recover $740.81 as damages for an alleged conversion of several tons of hay, a quantity of broom-corn and a hay press, belonging to plaintiff, which property was levied on and sold by the sheriff as the property of S. Donnell, the husband of plaintiff, under an execution bearing date of November 21, 1890, and reciting a judgment dated January 11, 1889.

The petition set forth the foregoing facts. Reese filed an answer admitting that he had levied upon and sold a part of the property mentioned in the petition, but denying that he had sold any property belonging to the plaintiff. The answer set up the judgment and the execution upon which the levy and sale were based, and averred that the land upon which the broom-corn and hay were grown was the property of S. Donnell but had been transferred by him to his wife for the purpose of defrauding his creditors, especially Goodno & Co., the execution creditors. The answer also contained the following averment:

" Further answering, this defendant says that plaintiff was present at both the levy and sale and had full knowledge of what was transpiring. She had abundant opportunity to claim said property, if it were honestly hers, but neither she nor any one for her

ever informed this defendant that she owned or claimed said property, until after said sale.''

Katzung's answer was practically the same as that filed by Reese. Plaintiff's reply to these answers contained a general denial only. Trial was had by jury, and verdict and judgment were rendered in favor of the defendants. To reverse this judgment the plaintiff brings these proceedings.

*J. D. McCleverty*, for plaintiff in error.

*C. E. Cory*, for defendant in error Simon Reese.

MILTON, J. At the outset, the motion filed by defendant in error Reese to dismiss the petition in error requires consideration. The contention is that the case-made contains no proper certificate or state-

1. Statement part of case-made.

ment showing that all of the evidence introduced on the trial is preserved. The only statement on this point is the following, which appears immediately after the journal entry of judgment and on the same page with the latter:

"And inasmuch as the above and foregoing matters and things do not appear of record herein, the said plaintiff presents this as a true case-made herein, showing and containing the pleadings upon which said action was tried, the evidence given and offered upon the trial thereof, and the record and proceedings of said court, as also the motion for a new trial with the ruling thereon, and asks that the same may be settled, signed and allowed as a true case-made in said action.''

This is followed by an acknowledgment of service of the case-made, signed by the defendant's attorneys, after which is the certificate of the trial judge showing the case-made to have been duly presented, allowed, and settled.

Preceding the introduction of the evidence of plain-

tiff is this statement : " Upon said trial the parties, to maintain the issues herein joined, introduced evidence as follows." Then this introductory statement precedes the testimony of each of plaintiff's witnesses : " ———— being sworn on behalf of plaintiff testified as follows." A large number of witnesses having testified on behalf of plaintiff, following the examination of one of them, are these consecutive statements : " Thereupon the plaintiff having introduced all her evidence rests her case." " Thereupon the defendants introduced their testimony as follows." After the testimony of several witnesses for defendants, are these entries : " Thereupon the defendants, having introduced all their evidence, rest their case." " Thereupon the plaintiff offered the following evidence in rebuttal." After the rebutting evidence are the following statements : " Thereupon the plaintiff, having introduced all her testimony, rests her case." " Thereupon the court instructed the jury as follows, to wit." The foregoing, in the light of several decisions of our Supreme Court, warrants us in holding that the case-made contains all the evidence.

In *Dewey v. Linscott* ( 20 Kan. 686 ), the Supreme Court, by Mr. Justice Brewer, said :

" It is not stated in express words [ in the record ] that all the testimony is preserved ; but as said in *Moody v. Arthur* ( 16 Kan. 425 ), that is not always necessary. If the case-made is so prepared that it is clear that all the testimony is in it, that is sufficient. . . . Anything which makes it apparent that the whole case is here is sufficient."

The case of *Newby v. Myers* ( 44 Kan. 477 ), is cited in support of counsel's claim that the certificate of counsel for plaintiff in error, quoted above as to contents of the case-made, is insufficient, and that such certificate is no part of a case-made. In the case at bar,

the attorney's statement is so closely connected with
the case-made that we are unwilling to hold it to be
immaterial. In the case of *Winstead v. Standeford*
( 21 Kan. 270 ), the court, after referring to the in-
sufficiency of the statement concerning the contents
of the case-made as found in the notice signed by the
attorneys for the defendants, which notice was
"found appended to the case-made," said :

" Now the foregoing notice and certificate are not
sufficient to show that the ' case-made ' contains all
the evidence.   The ' case-made ' should itself show it,
or at least it should be shown by something which
has received the approval of the judge as to its cor-
rectness."

As the statement by counsel in the present instance
precedes the judge's certificate, it seems to be " some-
thing which has received the approval of the judge as
to its correctness."

The evidence shows that Donnell had conveyed his
real property to his wife about two and one-half years
before the levy complained of was made, and that the
deeds therefor were properly recorded.

**2. Estoppel; party
not misled by
silence.** After that time he purported to act for his
wife as her agent.   The uncontradicted
evidence indicates that Mrs. Donnell bought the hay
press and that the dealers would not sell to him alone.
The hay and broom-corn were raised on the land deeded
as aforesaid to Mrs. Donnell and claimed by her as her
own property.   The under-sheriff testified that when
he went to the farm to make the levy Donnell was not
at home, and he asked Mrs. Donnell about the baled
hay.   She first said there was none ; then that it was
sold, but would not state to whom ; and afterwards
claimed that it was mortgaged.   The officer levied on
hay, broom corn, and two colts, but left the property

as he found it. Two days later the Sheriff himself went to the Donnell farm and made a new levy, which omitted the colts, and included a hay press besides the hay and broom-corn. Before making the levy, he had been told by the judgment creditor that the colts belonged to Mrs. Donnell or the children. Prior to making the levy, the Sheriff had been told by Mr. Allen, the under-sheriff, that there might be some question about the ownership of the property, and he had delivered to the judgment creditor an indemnifying bond to be executed just before he went to the Donnell premises, which bond was, in fact, executed and delivered on that day. He testified that before making the levy he asked Mrs. Donnell if that was Mr. Donnell's hay and that she answered it was all sold. The judgment creditor testified that he knew Donnell had put the title to his farm in his wife's name and that she claimed the ownership. When the sheriff levied on the hay press, Donnell took a doubletree from the press, stating that it belonged to him. The evidence is conflicting as to any claim of ownership of the property seized being made by or on behalf of Mrs. Donnell. Two or three parties were present at the sale by her request. In the course of its instructions the court said:

"This action is now brought by Betty Donnell, the wife of Solomon Donnell, to recover of the Sheriff and one of his bondsmen the value of that property, upon a claim by her that she, at the time of this levy and sale, and not her husband, was the owner of it; and the question of ownership is the main question in the case."

The seventh instruction is as follows:

"7. If the plaintiff, Betty Donnell, owned this property so seized and sold by the Sheriff, and was present when he levied upon it, or when he sold it,

and failed in any manner to call his attention to the fact that she was the owner of it, and did not, when the levy was made, or at any other time prior to the sale, give notice to the Sheriff that she was the owner of it, then her mouth is now closed from setting up a claim that she did own it; but, of course, there is no particular form in which such notification may have been given by her to the Sheriff. She could have done it in any way, or by any means of communication, so long as she did in some way or form communicate to him that she was the owner of the property or claimed to be the owner of it; and this claim of title to the property may have been made for the plaintiff by an agent or attorney, or both, and if by agent, the husband of the plaintiff was competent to act in that capacity."

The principal contention in this case is that the first sentence of instruction number seven is unwarranted and erroneous. Counsel for plaintiff in error seems to regard this as an instruction that a demand before the sale by Mrs. Donnell should have been made and proven before she could recover the property; while counsel for defendant in error regards this as an instruction concerning an estoppel on the part of Mrs. Donnell, and thereby concedes that no proof of a demand prior to the sale was necessary. There can be no controversy on this question of demand.

The portion of the defendant's answer which we have quoted indicates an intention to plead an estop-

3. Evidence not tending to prove estoppel.
pel by reason of the fact that Mrs. Donnell did not claim the property prior to the sale thereof. The estoppel is not sufficiently pleaded, as it is not alleged that the Sheriff was misled by her failure to make such claim. Being informed that some question as to ownership might arise, he had procured an indemnifying bond, and it is quite probable the levy would have been made if Mrs.

Donnell had asserted ownership.   But counsel for defendant in error, possibly because he has some doubt as to a question of estoppel by silence arising in the case of a female litigant, ingeniously suggests that Mrs. Donnell should be estopped because she talked too much.  He says : " Her case, therefore, is not one of silent acquiescence.   She wilfully misled the officer.   By doing so she participated in the sale.   Even if the property belonged to her, she cannot complain."   We observe that there is no evidence whatever to indicate that the Sheriff was influenced to do or to refrain from doing any act by reason of what Mrs. Donnell said to him or to the under-sheriff, except that he required an indemnifying bond upon receiving the report of the under-sheriff.

As to estoppel by silence, which is the only estoppel pleaded herein, we think the doctrine declared in the case of *Schilling v. Black* (49 Kan. 552) is controlling.  In that case, creditors of Samuel Black had caused a horse in his possession to be attached, and afterwards sold by the constable, as his property.  After the sale, William Black, the father of Samuel Black, claimed the horse, and commenced an action against the constable and two sureties on his official bond, alleging a breach of the condition thereof in seizing and selling the horse to satisfy a debt of said Samuel Black.   It was alleged that William Black was present in the court when the attachment suit against his son was tried ; that he knew the horse had been attached in that action ; that judgment had gone against his son, and that the horse was sold in pursuance of the judgment and order of the court in that case ; that he was present at the sale and did not at any time during trial or before the sale give any notice to the officer or any one else of his claim to the

4. Silence when levy is made.

horse, or make any demand upon the officer therefor. The court, by Commissioner Strang, said :

"It is claimed that such conduct on the part of the defendant herein estops him from subsequently claiming the horse as his own. Did such conduct on the part of the defendant amount to an estoppel? When an officer wrongfully seizes the property of one person upon process against another, is the latter required to make any claim of property before commencing proceedings in recovery? May he not, with full knowledge of each step taken in the proceedings under which his property is seized, remain silent until the last act therein is closed, and then commence proceedings for its recovery, or the recovery of its value? Whatever the rule may be in an action by the owner against an innocent purchaser of property, which the former has seen the latter purchase at judicial sale and pay for, without any notice of claim to the property by the former, we do not think that, in an action by the owner against an officer who has wrongfully seized and sold his property, the silence of the former, although aware of the seizure and sale when made, will operate as an estoppel to his recovery. The seizure being wrongful, the silence of the owner forfeited none of his rights, nor did it cure the wrong of the officer. In *McKinney v. Purcell* (28 Kan. 452), the court said : ' The original seizure was wrong. Defendant did not assent to it. Her silence during the continuance of the attachment, and her failure to object to any of the proceedings of the plaintiffs, give them no greater rights than they had in the first instance, and she waived none of her rights.' "

From the foregoing, it appears clear that the trial court erred in giving instruction number seven. We are not able to say, from a reading of the record, that the jury might not have decided the case in favor of plaintiff in error upon the issue of ownership of the property. But with this instruction to guide them, they were required to also find that she informed the Sheriff of her claim of ownership.

It is suggested that the case has been tried four times and that it ought now to end. It is to be regretted that this litigation has been so protracted and that the end is not yet, but we have no discretion to exercise herein. As we find the law to be, so must it be declared.

The judgment of the District Court is reversed, and the cause remanded for a new trial.